IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LINDA FORDE,

    Plaintiff,

    v.                                  CIVIL NO.: 23-01052 (MEL)

CONCHO CORPORATION, et al.,

    Defendants.

**OPINION AND ORDER**

## I. INTRODUCTION

This is a diversity jurisdiction tort action brought by Plaintiff Linda Forde ("Ms. Forde") seeking to recover damages for the alleged negligence of defendant Concho Corporation, owner, manager, operator, and administrator of the Copamarina Beach Resort ("Copamarina"), and its insurer, Universal Insurance Company (collectively "Defendants"). On February 3, 2023, Plaintiff filed suit against Defendants alleging that the accident and damages suffered by Ms. Forde at the Copamarina on February 13, 2022, were the result of gross negligence by Copamarina. ECF No. 1 at 6-7. Defendants answered Plaintiff's complaint on May 1, 2023. ECF No. 8.

Pending before the Court is Defendants' motion for summary judgment.[1] ECF No. 38. In their motion for summary judgment, Defendants argue that Plaintiff "lacks sufficient evidence as a matter of law to establish all the essential elements of her tort claim." ECF No. 38 at 1-2.

---

[1] Both Defendants' motion for summary judgment and motion *in limine* were due on October 31, 2024. ECF No. 34. Defendants did not file either motion within that deadline; instead, the following day, on November 1, 2024, Defendants filed a motion for extension of time requesting an additional seven days to file both motions. ECF No. 35. Defendants filed both motions on November 8, 2024. ECF Nos. 37, 38. Plaintiff moved to strike both of these motions on untimeliness grounds. ECF No. 39. The Court granted Plaintiff's motion with regard to the motion *in limine*, but denied Plaintiff's motion with regard to the motion for summary judgment. ECF No. 41. Thus, Defendants' motion *in limine* was stricken from the record, as well as any portions of the motion for summary judgment that incorporate arguments from the motion *in limine* or rely on a favorable ruling on said motion *in limine*. *Id.*

Specifically, Defendants argue that Plaintiff lacks evidence to establish "the elements of negligence, foreseeability and actual or constructive knowledge" on part of Defendants. *Id*. Plaintiff opposed Defendants' motion for summary judgment on December 20, 2024. ECF No. 43. Defendants accompanied their motion with a statement of proposed undisputed material facts to which Plaintiff filed a response with additional proposed material facts. ECF Nos. 38-1, 43. Defendants did not seek leave to reply to Plaintiff's statement of proposed additional facts.

For the reasons detailed below, Defendants' motion for summary judgment is DENIED.

### II.   LEGAL STANDARDS

#### A. Summary Judgment

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 (1st Cir. 2011) (quoting *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp.*, 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st

Cir. 1990) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, the party cannot merely "rely on an absence of competent evidence, but must affirmatively point to specific facts [in the record] that demonstrate the existence of an authentic dispute." *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995) (citation omitted). The party need not, however, "rely only on *uncontradicted* evidence . . . So long as the [party]'s evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original) (citation omitted).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan*, 904 F.2d at 115. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. P. R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

### III.  MATERIAL FACTS NOT IN CONTROVERSY[2]

Plaintiff and her partner, Mr. Jonathan Feinman ("Mr. Feinman"), were guests of Copamarina in Guánica, Puerto Rico, a hotel owned, managed, operated, and administrated by Concho Corporation. ECF No. 38-1 at 1, ¶ 1; ECF No. 43 at 1, ¶ 1; ECF No. 1 at 4, ¶ 10; ECF No. 8 at 3, ¶ 10. On the night of February 13, 2022, Plaintiff and Mr. Feinman decided to sit on a hammock hung between two palm trees that was owned, installed, and maintained by Copamarina. ECF No. 38-1 at 1, ¶ 1; ECF No. 43 at 1, ¶ 1, ¶ 9; ECF No. 43 at 11, ¶¶ 2-3, ¶ 9; ECF No. 38-3 at 11:1-11. There was a light pointing away from the hammock area, illuminating a nearby deck and gazebo; however, there was no direct light on the hammock itself. ECF No. 43 at 11, ¶¶ 7-8; ECF No. 43 at 14, ¶ 18; ECF No 38-3 at 19:2-8. Furthermore, the hammock was placed above an irregular surface that had a downward slope. ECF No. 43 at 11, ¶ 5; ECF No. 42-4 at 1-29. Specifically, the surface below the hammock contained sand erosion, rocks, and tree roots. ECF No. 43 at 14-15, ¶ 20; ECF No. 42-1 at 3; ECF No. 42-4 at 1-29.

Mr. Feinman spread the hammock so that Plaintiff could sit on the hammock first. ECF No. 43 at 13, ¶ 10; ECF No. 38-3 at 11:10-16. While sitting in the hammock, neither Mr. Feinman nor Plaintiff could touch the ground with their feet. ECF No. 43 at 13, ¶¶ 14-15; ECF No. 43 at 15, ¶ 21; ECF No. 38-3 at 11:19-20; ECF No. 42-1 at 3. After spending some time in the hammock, Plaintiff attempted to exit the hammock; however, Plaintiff could not place her feet firmly on the ground due to the hammock's height. As Plaintiff was getting off the hammock, the hammock flipped, and both Plaintiff and Mr. Feinman fell onto the ground below. ECF No. 43 at 13, ¶¶ 11-

---

[2] The following of Defendants' proposed facts are excluded because they are based on Defendants' *Daubert* motion to exclude Plaintiff's expert, which has been stricken on grounds of untimeliness: 6-10, 14-17. ECF No. 38-1 at 1-5. All of Plaintiff's additional proposed facts are deemed admitted because Defendants did not file a reply and the facts are supported by an adequate citation to the record. ECF No. 43 at 10-15.

12; ECF No. 43 at 14, ¶¶ 16-17; ECF No. 38-2 at 17:19-25; ECF No. 38-3 at 11:16-22. Plaintiff suffered injuries as a result of the fall. ECF No. 43 at 14, ¶ 16; ECF No. 42-1 at 3. Plaintiff and Mr. Feinman did not alert anyone at the hotel about the accident or the placement of the hammock on the night the accident occurred, or at any time thereafter, nor did they file a report regarding the same. ECF No. 38-1 at 1, ¶¶ 2-4; ECF No. 43 at 2, ¶¶ 2-4.

### IV. ANALYSIS

Defendants move for summary judgment on Plaintiff's claim of negligence. ECF No. 38 at 1-2. In the complaint, Plaintiff alleges that "[t]he type of hammock selected by the hotel or allowed to be installed, should have never been made available to hotel guests, and much less in the area that the hotel selected to place the same and manner in which the same was installed." ECF No. 1 at 6, ¶ 27. Specifically, Plaintiffs allege that Defendants "placed the hammock high and in an area that was covered by rocks and sand…" *Id.* at 7, ¶ 28. Defendants argue in their motion for summary judgment that Plaintiff is making a failure to maintain premises liability claim and does not provide sufficient evidence as a matter of law to establish all the necessary elements. ECF No. 38 at 1-2. Plaintiff acknowledges that there was no defect in the hammock itself. Nevertheless, Plaintiff contends that the manner in which the hammock was installed and the location where the hammock was placed created an unreasonably dangerous condition for hotel guests. ECF No. 42 at 13.

A federal court sitting in diversity, as in this case, must apply state substantive law and federal procedural law. *See Suero-Algarín v. CMT Hosp. HIMA San Pablo Caguas*, 957 F.3d 30, 39 (1st Cir. 2020) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). Thus, Puerto Rico jurisprudence dictates the substantive law of this case. *See Baum-Holland v. Hilton*

5

*EL Conquistador Management, LLC*, 964 F.3d 77, 87 (1st Cir. 2020) (applying Puerto Rico substantive law in its diversity case).

Plaintiff brings the present suit under Puerto Rico's general tort statute as codified in Article 1536 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. tit. 31 § 10801 ("Article 1536")[3], which provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." "Fault" under Article 1536 could be "committed knowingly and willfully" or could simply be an act "willful or not, of a person which produces a wrong or damage." *Reyes v. Heirs of Sánchez Soto*, 98 D.P.R. 305, 310 (1970). Hence, "the wrongdoer who is guilty of fault or negligence, whatever the consequences may be, is bound to repair the wrong...." *Id*. at 311–12. In light of this broad standard, the First Circuit has recognized that tort liability under Puerto Rico law consists of three elements: "(1) evidence of a physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." *González-Cabán v. JR Seafood Inc.,* 48 F. 4th 10, 14 (1st Cir. 2022) (quoting *Vázquez-Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 49 (1st Cir. 2007)). The beach of duty element requires showing the existence of a duty and its breach; in most negligence cases, a defendant's duty "is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances." *Vázquez-Filippetti*, 504 F.3d at 49 (citing *Ortiz v. Levitt & Sons of P.R., Inc.*, 1 P.R. Offic. Trans. 407, 101 D.P.R. 290 (1973)). Accordingly, "a

---

[3] Article 1802 of the Puerto Rico Civil Code of 1930, Puerto Rico's previous tort statute, was replaced by Article 1536 when the new Puerto Rico Civil Code was enacted in November 2020. PR Laws Ann. tit. 31 § 10801. However, Articles 1802 and 1536 have provisions that "are extremely similar and thus can be used interchangeably." *Orellano-Laureano v. Instituto Médico del Norte, Inc.*, 2023 WL 4532418, at *6 n.5 (D.P.R. 2023). Courts in this district accordingly apply caselaw analyzing Article 1802 to claims arising under Article 1536. *See e.g.*, *Dumanian v. FirstBank P.R.*, 2024 WL 197429, at *3 n.4 (D.P.R. 2024).

defendant only breaches his duty if he acted (or failed to act) in a way that a reasonably prudent person would foresee as creating undue risk." *Id.* (internal quotation marks omitted). "As is true in most jurisdictions, foreseeability is a central issue in these cases, as it is an element of both breach of duty and proximate cause." *Marquez v. Casa de España de Puerto Rico*, 59 F.Supp.3d 409, 413 (D.P.R. 2014) (quoting *Vázquez-Filippetti*, 504 F.3d at 49).

Moreover, business owners have "a duty to keep [their] establishment in a safe condition so that the clients do not suffer harm or damage." *Smith v. Condado Duo La Concha SPV, LLC,* 2017 WL 9121575, at *3 (D.P.R. September 14, 2017) (quotation omitted) (citing *Torres v. Kmart Corp.*, 233 F.Supp.2d 273, 278 (D.P.R. 2002). However, this does not mean that business owners are liable for every damage that occurs; instead, a business owner is only deemed liable for "risky conditions inside the premises that the owner knew or should have known existed." *Id*. Alternatively, if the plaintiff argues that the risky condition was a purposeful design choice by the business owner rather than a negligent failure to maintain otherwise safe conditions, then the plaintiff must "present evidence as to the specific duty or standard of care applicable to the design of the product or property at issue," which usually warrants "expert testimony regarding the standard of design." *Smith,* 2017 WL 9121575, at *3.

Here, Plaintiff is not alleging a premises liability claim based on negligent design of the hammock. Furthermore, Plaintiff is not alleging negligent maintenance, as there is no claim that Ms. Forde's accident was caused by Defendants' "failure to remedy conditions that the property owner neither intended nor desired." *Vázquez-Filippetti*, 504 F.3d at 51. For example, there are no allegations regarding any defects suffered by the hammock's structural components, allegations of unintended items on the ground below the hammock, allegations that the hammock's chains to the palm trees broke or slipped, or that the hammock could not support the weight of Plaintiff and her

7

partner. ECF No. 38-1 at 2-3, ¶¶ 11-12; ECF No. 43 at 5-6, ¶¶ 11-12. Instead, Plaintiff's premises liability claim is that the hammock constituted a dangerous condition with regards to the height at which the hammock was placed, the ground conditions/inclination below the hammock, and the lack of lighting in the area.[4] ECF No. 42 at 12. In order to succeed on this claim, Plaintiff must show duty, breach of duty, and causation. *See González-Cabán,* 48 F. 4th at 14; *Vázquez-Filippetti*, 504 F.3d at 49.

### A. Duty

The first element of a negligence action is commonly known as a duty of care. *Baum-Holland*, 964 F.3d at 88. It may arise "(1) by a statute, regulation ordinance, bylaw, or contract; (2) as the result of a special relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to the situation." *De-Jesús Adorno v. Browning Ferris Indus. of P.R., Inc.*, 160 F.3d 839, 842 (1st Cir. 1998). As recognized by the First Circuit Court of Appeals, Puerto Rico law imposes upon hotels and other "innkeepers" a "heightened duty of care towards their guests" requiring an innkeeper to "act as a prudent and reasonable person under the circumstances." *Baum-Holland*, 964 F.3d at 88. There is nothing in the record to suggest that Copamarina does not qualify as a hotel or innkeeper under Puerto Rico law subject to the definitions enshrined in 10 L.P.R.A. § 711.[5] Defendants have admitted that

---

[4] Defendants recognize that Plaintiff also makes a failure to warn premises liability claim in her complaint. ECF No. 28 at 8; *see* ECF No. 1 at 7, ¶ 28 ("Defendants placed the hammock high and in an area that was covered by rocks and sand, without any type of warning signs."); *see also id.* at 7, ¶ 29 ("Defendants should have either eliminated the hammock, or placed warning signs of how to use it and/or the dangers of use of the same."). However, Defendants do not explicitly address this claim or develop any argument relating to this claim. Furthermore, Defendants did not propose any fact to that effect. At this juncture of the proceedings, the Court is not giving any opinion on whether the law recognizes a duty to warn in these particular circumstances; however, because Defendants did not move with specificity or elaboration on this claim in their motion for summary judgment, Plaintiff's failure to warn claim remains outstanding.

[5] "Innkeeper" is defined under 10 L.P.R.A. § 711(b) as "any person, firm, corporation, or other type of business organization, engaged for profit, in the operation of a hotel, and as herein used, shall include the officers, agents, and employees of such person, firm, corporation, or other type of business organization, unless the context otherwise requires[.]" 10 L.P.R.A. § 711(b). "Hotel" is defined under 10 L.P.R.A. § 711(a) as: "any place of shelter operated for

Ms. Forde and her partner were guests of the hotel. ECF No. 8 at 2-3, ¶¶ 8-10. It is undisputed that the subject hammock was owned, installed, and maintained by Copamarina.[6] ECF No. 43 at 11, ¶¶ 2-3. Also, Defendants' answer to the complaint acknowledges that Copamarina had several hammocks in place around the hotel's premises, including in the beach area. ECF No. 8 at 2-4, ¶¶ 9-13. Therefore, Plaintiff has pointed to enough evidence for a jury to find that Plaintiff was owed a duty as an invitee of the hotel.

### B. Foreseeability

"[L]iability will only arise if the damages complained of were reasonably foreseeable." *Blomquist v. Horned Dorset Primavera, Inc.*, 925 F.3d 541, 547 (1st Cir. 2019); *see also Woods-Leber v. Hyatt Hotels of P.R., Inc.*, 124 F.3d 47, 50 (1st Cir. 1997)); *Irvine v. Murad Skin Research Labs., Inc.*, 194 F.3d 313, 321 (1st Cir. 1999) (citing *Malavé-Félix v. Volvo Car Corp.*, 946 F.2d 967, 971 (1st Cir. 1991)). Because foreseeability is a central issue in premises liability claims, as it is an element of both breach of duty and proximate cause, the resolution of this issue possesses the capacity to sway the outcome of this case. *Vázquez–Filippetti,* 504 F.3d at 49.

Despite the heightened duty of care owed by innkeepers under Puerto Rico law, "hotels are not absolute insurers of their guests' well-being." *Baum-Holland*, LLC, 964 F.3d at 88 (citing

---

profit, providing protection for persons and property, and shall include any building or group of buildings under a common management where the general public is admitted, where all who conduct themselves properly and who are able and ready to pay for their lodging are received, if there is accommodation for them, and who, while there, are supplied lodging and meals, and such lodging, service and other amenities as the establishment may afford at the rates established by the hotel." 10 L.P.R.A. § 711(a). The term applies to "any establishment having fifteen (15) or more bedrooms, including hotels, apartment hotels, inns, guest cottages, rooming houses, lodging houses, paradores, tourist villas, condohotels, short-term rental condominiums, motels, and any other establishment by whatever name it is known or advertised offering lodging and meals to the public." 10 L.P.R.A. § 711(a). A "guest" of a hotel or innkeeper is "[a]ny person entering the premises of a hotel with the intent of being a guest, whether or not he/she becomes said guest." 10 L.P.R.A. § 711(d)(2).

[6] Moreover, Defendants do not allege once in their motion for summary judgment that the subject hammock does not belong to them or that they did not install it. *See generally* ECF No. 38.

9

*Blomquist*, 925 F.3d at 547 (internal quotations omitted). "[E]ven where the hotel has a duty of care, the court must still determine what degree of care is required by considering the foreseeability of an injury, the nature and magnitude of the injury, and what a reasonable and prudent man would have done under the same circumstances." *Id*. (quoting *Woods-Leber*, 951 F. Supp. at 1036) (internal quotations omitted, emphasis in original). "[N]otwithstanding the heightened duty of care and protection, the hotel-keeper is not liable for harm unless the harm is reasonably foreseeable." *Woods-Leber*, 124 F.3d at 51 (1st Cir. 1997). Thus, for liability to attach in this case, an unsafe condition must exist, and the condition must have been either known or reasonably foreseeable, making the injury avoidable had the defendant acted with due care. *See e.g. Rigual-Quintana v. United Parcel Service, Co.*, 195 F.Supp.2d 358, 361 (D.P.R. 2002); *Woods–Leber,* 124 F.3d at 52.

"The rule of foreseeability does not mean that the precise risk or the exact result which was encountered should have been foreseen. The essential factor is to be under a duty to foresee, *in a general way,* consequences of a particular type." *Gines v. Aqueduct & Sewer Auth.,* 86 P.R.R. 490, 496 (1962). The duty of care requires "anticipating reasonably probable injuries to probable victims," and therefore "does not extend to all imaginable effects resulting from defendant's conduct." *Wojciechowicz v. United States*, 576 F. Supp. 2d 241, 272 (D.P.R. 2008), *aff'd*, 582 F.3d 57 (1st Cir. 2009) (citations omitted).

The parties do not agree on whether the hammock constituted a foreseeably dangerous or hazardous condition. With respect to claims based upon premises liability, the Puerto Rico Supreme Court has concluded that "the owner or operator of a commercial establishment has a duty to exercise reasonable care to maintain those areas that are accessible to the public, so as to avoid injury to its patrons." *Cline v. Puerto Rico Ports Auth.*, 620 F.Supp.2d 233, 237 (D.P.R. 2008) (citing *Hernández–López,* 117 D.P.R. at 104). "When a dangerous condition is present on

10

commercial premises and injury results to a business invitee, tort liability often turns on whether the owner or occupier knew or reasonably should have known of the existence of the hazard." *Calderon-Ortega v. United States*, 753 F.3d 250, 251 (1st Cir. 2014). To prove this, a plaintiff must show that the defendant had actual or constructive knowledge of a hazardous or dangerous condition on its premises that more likely than not caused the damages to the plaintiff. *Vázquez–Filippetti,* 504 F.3d at 50.

Defendants argue that Ms. Forde's accident was not foreseeable, and they had no actual or constructive knowledge of the danger of the hammock because Ms. Forde did not alert the hotel management or the employees of the alleged defects of the hammock at any time during their stay. ECF No. 38 at 13. Further, Defendants argue that Plaintiff has not provided any evidence establishing that similar accidents involving the hammock had occurred prior to Plaintiff's accident. *Id*. Defendants contend that this lack of evidence is "dispositive, since Plaintiff in this case is required to establish that Defendants had actual or constructive knowledge of the allegedly dangerous condition." *Id*. at 14 (citing *Vázquez-Filippetti v. Banco Popular de Puerto Rico*, 504 F.3d 43 (1st Cir. 2007)). Nevertheless, although Defendants' arguments poke sizable holes in Plaintiff's claims, they are not dispositive. *See Woods-Leber v. Hyatt Hotels of P.R., Inc.*, 951 F. Supp. 1028, 1039 (1st Cir. 1997) (finding that the primary method of proof of foreseeability is prior similar incidents but that "some other sort of evidence tending to show that the incident was foreseeable" would also have been acceptable).

Here, Plaintiff's evidence tending to show that the accident was "foreseeable" comes from Ms. Forde and her partner Mr. Feinman's deposition testimony, as well as expert testimony from Engineer Iván Baigés ("Eng. Baigés") who reviewed the area of the hammock at the Copamarina and testified regarding the accident to "determine if there was a hazard" and how the hazard

contributed to the accident. ECF No. 42-2 at 10. Ms. Forde and Mr. Feinman's testimony was that the hammock was high off the ground, that the surface below them was uneven and inclined downward toward the water, and that there was no lighting in the area of the hammock. ECF No. 43 at 11, ¶¶ 7-8; ECF No. 43 at 14, ¶ 18; ECF No 38-3 at 19:2-8; ECF No. 43 at 11, ¶ 5; ECF No. 42-4 at 1-29; ECF No. 43 at 14-15, ¶ 20; ECF No. 42-1 at 3; ECF No. 42-4 at 1-29. Eng. Baigés noted that Ms. Forde and Mr. Feinman got on the hammock and "both were facing the shore/water," but upon exit, Ms. Forde stepped forward "in the direction facing the shore." ECF No. 38-4 at 23. Given this information, Eng. Baigés assessed weight distribution and stabilization upon entering and exiting a hammock and how the conditions of the subject hammock created instability and contributed to Ms. Forde's fall while dismounting. ECF No. 42-2 at 22-28. The Court does not weigh the evidence. A determination of whether it was reasonably foreseeable to Copamarina that in a hammock placed at the height in question, above an uneven surface of a certain inclination, under darkness or insufficient lighting, someone could get hurt upon exit, is a question for the jury and not the court on summary judgment. *Marshall v. Pérez-Arzuaga*, 828 F.2d 845, 849 (1st Cir. 1987) ("Not only ordinary fact questions, but also evaluative applications of legal standards (such as the concept of legal foreseeability) to the facts are properly jury questions).

Defendants bring to the attention of the Court that "thousands" of people use hammocks every day. ECF No. 38 at 12. "[T]here is no obligation to protect the visitor [of a business establishment such as a hotel] against dangers which are known to [the visitor], or which are so apparent that he may reasonably be expected to discover them and be able to protect himself." *Robles v. Pablo Fajardo*, 2016 WL 2637814, at *2 (D.P.R. 2016) (citing *Figueroa–Garcia v. United States*, 364 F.Supp.2d 140, 143 (D.P.R. 2005)). Mr. Feinman testified that he

saw that the hammock was fairly high off the ground before he and Ms. Forde mounted it; however, he claims that he did not realize exactly how high it was until he was on the hammock:

> So, we went to the hammock, and I'd seen that it was fairly high off the ground, strung between the two (2) trees. So, I did what I could to hold it open. So, Linda got in first, and then I came in after her. But once we were in the hammock, we were very uncomfortable. We didn't realize how high of the ground it was. And we didn't feel comfortable staying in it.

ECF No. 38-3 at 11:11-16. Puerto Rico has adopted the doctrine of assumption of risk in generally two levels: "(1) the primary sense—where there is a limited duty of care on the defendant's part; and (2) the secondary sense—which is actually a form of comparative negligence." *Baum-Holland*, 336 F. Supp. 3d at 22. Assumption of risk in the primary sense as a limited duty of care "applies to professions who face predictable risks in their employment and have alternate means of seeking compensation for injuries that arise while performing their jobs. Commercial establishments such as hotels certainly do not have such a limited duty of care to their guests." *Blomquist v. Horned Dorset Primavera*, 2015 WL 1894317, at *5 (D.P.R. Apr. 27, 2015). Therefore, Mr. Feinman's testimony could trigger an assumption of risk in the secondary sense, which "provides that the negligence of a plaintiff will not bar a tort-based claim but rather that the relief awarded shall be reduced proportionate to the degree of plaintiff's negligence." *Baum-Holland*, 336 F. Supp. 3d at 22 (citing *Rivera Santiago v. United States*, 2009 WL 702235, at *4 (D.P.R. Mar. 11, 2009)). Issues of comparative negligence can generally be left to the jury to assess. *Blomquist*, 2015 WL 1894317, at *5 ("[A]ny such secondary assumption of risk argument is an issue for trial and does not warrant summary dismissal of plaintiffs' claims."). Furthermore, whether the hammock's dangers were apparent or not, or whether Plaintiff should have reasonably expected the danger, is also a question for the jury, as there might be reasonable difference of opinion as to evaluative

13

determinations. *Jiménez v. Pelegrina,* 112 P.R. Dec. 881, 885 (1982); *Pabon Escabí v. Axtmayer,* 90 D.P.R. 20, 25 (1964).

V. **CONCLUSION**

Given the evidence of record, whether the placement of the hammock in question constituted a dangerous condition that was reasonably foreseeable to the Defendants is a genuine dispute of fact. A reasonable jury could decide either way: whether the hammock was placed unreasonably high, whether the hammock's height made a fall more likely, whether the slope was steep and if so, whether it contributed to the fall, whether there was insufficient lighting, and whether the lack of lighting made it hard to see where to step upon exiting the hammock. Thus, weighing and interpreting the evidence are appropriately left to the trier of fact. Accordingly, Defendants' motion for summary judgment (ECF No. 38) is DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of January, 2025.

s/Marcos E. López  
U.S. Magistrate Judge