**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

LINDA FORDE,

    Plaintiff,

       v.

CONCHO CORPORATION, et al.

    Defendants.

CIVIL NO.: 23-1052 (MEL)

**OPINION AND ORDER**

Pending before the Court is Defendants Universal Insurance Company's ("UIC") and Concho Corporation's ("Copamarina") (collectively "Defendants") Motion for Attorney's Fees pursuant to Fed.R.Civ.P. 54(d)(2) and Plaintiff Linda Forde's ("Plaintiff" or "Forde") response in opposition to the same. ECF Nos. 82, 83.

Claims for attorney's fees are governed by Fed.R.Civ.P. 54(d)(2). Now, "[i]n cases where the federal district court's jurisdiction is based upon diversity of citizenship, such as this one, state law, rather than federal law applies to determine the question of imposition of attorney's fees." *See Taber Partners I v. Insurance Co. of North America, Inc.*, 926 F. Supp. 36, 38 (D.P.R. 1996) (citing *Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 841 (1st Cir. 1983)). Rule 44.1(d) of the Puerto Rico Rules of Civil Procedure provides that "[i]n the event any party or its lawyer acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorney's fees which the court decides corresponds to such conduct". P.R. Laws Ann. tit. 32, app. V, Rule 44.1(d) (2026).

"A finding of obstinacy requires that the court determine a litigant to have been unreasonably adamant or stubbornly litigious, beyond the acceptable demands of the litigation,

thereby wasting time and causing the court and the other litigants unnecessary expense and delay." *De León López v. Corporación Insular de Seguros*, 931 F.2d 116, 126 (1st Cir. 1991). "Obstinacy is to be judged in light of the overall circumstances of the particular case." *Correa v. Cruisers, a Div. of KCS Intern., Inc.,* 298 F.3d 13, 31 (1st Cir. 2002). "Courts look to several factors before making a determination of obstinacy: (1) the complexity of the issues, the clarity of the law, and the disposition of the litigants – in short, the 'personality' of the case; (2) the delay and stubbornness in discovery, including a disregard for court orders; (3) temerity in settlement negotiations; and (4) the novelty of the claim." *Rodríguez-López v. Institución Perpetuo Socorro, Inc.*, 616 F. Supp. 2d 200, 202 (D.P.R. 2009) (citations omitted).

UIC and Copamarina's motion cannot be taken lightly even though some of their arguments are unfounded. From the outset, a few principles need to be made clear. The mere fact that a plaintiff loses a case or that she loses in the very first question of a verdict form does not necessarily mean that the complaint was frivolous. Just because a jury chooses not to believe that a plaintiff fell in a tort case simply means that in the jury's eyes the batter was out before reaching first base. However, whether a player is out at first base, second base, third base or the homeplate does not make the batter's effort to help the team score any more or less genuine. On a different note, with respect to settlement negotiations, the parties are always expected to act in good faith. However, UIC and Copamarina are not specific enough in their motion in terms of the settlement offers and counter offers that were exchanged to support a finding of obstinacy.

Nevertheless, UIC and Copamarina are correct that this case does not present complex or novel issues of law or fact. More importantly, they contend that "the opinions of … [Plaintiff's] retained liability expert, Mr. Iván Baigés, were grossly speculative." ECF No. 82 at 3, ¶12. A

2

portion of the Court's ruling on Defendants' Fed.R.Civ.P. Rule 50 motion at trial highlights this

concern:

> Eng. Iván Baigés' testimony as an accident reconstructionist leaves much to be desired. Did he ever measure the angle of inclination of the slope between the sea and the hammock? No. Did he take measurements of the height of where the hammock was chained? No. Did he base his testimony on any building or design code that pertains to installation of hammocks? No. Did he take into account any plant growth for differences in height at the time of the measurements from the date of the incident? No. Did he take into account differences that may have occurred in the terrain or slope as a result of hurricane Fiona's impact on Puerto Rico? No. Did he take into account Ms. Forde's pre-existing medical conditions? No, even though he admitted that he usually does when doing accident reconstruction analysis. Did he measure the height of Ms. Forde and her partner? No. Did he take into account the weight of Ms. Forde and her partner? No. Does he know how high Ms. Forde and her partner's feet were from the ground when they tried to exit the hammock? No. Did he take into account whether consumption of alcoholic beverages played a role in the fall? No. Did he unequivocally testify that the conditions of the site and the hammock when he inspected them were the same or reasonably the same as on the date of the incident back in February 13, 2022? No. And to make matters even worse, not a single photograph that Eng. Baigés used for his expert report was introduced into evidence at trial. All he could do was say that they were similar, but not the same. In other words, Eng. Baigés' testimony walks painfully near to the realm of speculation. One could almost argue that his two site inspections were almost useless. His testimony seems to be based primarily on the input he received from the Plaintiff and his own analysis of … gravity and how a woven hammock stretches.
>
> However, there are a few matters that he testified, that correct or incorrect, could shed some light on how and why the fall occurred. For example, he explained why not being able to reach the ground with the feet while attempting to exit the hammock creates a dynamic situation of instability. He also explained the effect of strong lighting towards the pier while simultaneously having poor lighting near the area of the hammock. And he explained how and why the hammock could flip backwards, despite the Plaintiff and her partner trying to exit forward.

ECF No. 73, Jury Trial, Feb.26, 2025, at 9:23 AM – 9:27 AM.

Clearly, UIC's and Copamarina's argument that Eng. Baigés' testimony was speculative is

not frivolous and Forde should have carefully pondered whether there was sufficient evidence to

3

prove that it was more likely than not that Copamarina was aware of an unreasonably dangerous condition at its resort's premises.

To evaluate Plaintiff's request for attorney's fees, however, the procedural context of this case needs to be taken into account. Pursuant to the Court's order on August 5, 2024, motions for summary judgment and motions *in limine* to exclude expert testimony (or *Daubert* motions) were due on October 31, 2024. ECF No. 34. Defendants did not file a motion for summary judgment or a motion *in limine* on or before that deadline. This had two consequences: first, Plaintiff's request to strike Defendants' motion *in limine* to exclude the Plaintiff's expert witness was granted. Second, any portions of Defendants' motion for summary judgment that incorporated arguments from the motion *in limine* to exclude Plaintiff's expert witness were not taken into account. ECF No. 41. Ultimately, the Defendants' motion for summary judgment was denied. ECF No. 52.[1]

It is of no use to speculate as to how the Court would have ruled on a motion *in limine* that was stricken from the record. Nevertheless, had Defendants' prevailed in the exclusion of Eng. Baigés' testimony at the pretrial phase, a possibility that could well be characterized as a plausibility in light of Eng. Baigés' dubious testimony at trial, the analysis of the motion for summary judgment and/or the outcome of the settlement negotiations could have been impacted. Defendants, however, missed the deadline to file the motion to exclude Eng. Baigés' testimony and hence, Eng. Baigés took the witness stand at trial. Under these circumstances, the Court is reluctant to award attorney's fees and thus, Defendants' motion for attorney's fees is DENIED.

---

[1] On February 7, 2025, that is significantly after the order striking their motion *in limine* was issued on December 13, 2024, Defendants filed a motion for reconsideration seeking leave to file once again their motion in *limine*. ECF No. 60. This motion was denied, but Defendants' were not left completely empty handed in the Court's order which contained the following ruling: "[N]othing qualifies Eng. Ivan J. Baigés to render the opinion that '[i]t is foreseeable that The Copamarina Hotel guests would be attracted to using a hammock that is on site next to the water during the nighttime.' Therefore, Eng. Baigés is precluded from testifying as to Conclusion 1 of his report. ECF No. 37-1, at 11." ECF No. 66.

However, Plaintiff needs to understand that the line separating this case from a finding of obstinacy and frivolity is as thin as ice on a warm day of early spring.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 19th day of March, 2026.

s/Marcos E. López
U.S. Magistrate Judge
